UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on June 6, 2025

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT A. TERRELL,<br><br>Defendant. | CRIMINAL NO.<br><br>GRAND JURY ORIGINAL<br><br>VIOLATIONS:<br><br>18 U.S.C. § 1343 (Wire Fraud)<br><br>18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)<br><br>FORFEITURE ALLEGATION:<br>18 U.S.C. §§ 981(a)(1)(C), 982(a)(1);<br>21 U.S.C. § 853(p); 28 U.S.C. § 2461(c) |

## INDICTMENT

The Grand Jury charges that:

At times material to this indictment:

### BACKGROUND

1. ROBERT A. TERRELL ("Terrell") resided in Washington, D.C., and Maryland.

2. Terrell was the sole owner of District Logistics LLC, which was established in the District of Columbia in or around 2016.

3. PNC Bank, M&T Bank, and Robinhood were financial institutions as defined in 31 U.S.C. § 5312(a)(2).

4. District Logistics LLC maintained multiple bank accounts at PNC Bank including accounts ending in 3205 and 0426.

5. Terrell maintained an individual brokerage account ending in 1884 at Robinhood.

6. M&T Bank owned a mortgage on a Washington, D.C., property located on Rhode Island Avenue, NE, in which Terrell had an interest.

7. The Coronavirus Aid, Relief, and Economic Security Act ("The CARES Act") was a federal law enacted on or about March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of funding for small businesses were Economic Injury Disaster Loans ("EIDL").

8. The CARES Act and subsequent legislation authorized the U.S. Small Business Administration ("SBA") to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. These loans were provided directly from the SBA and were low-interest, fixed-rate, long-term loans.

9. To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide certain information about its operations. The applicant also was required to certify that all representations in the application—including all supplementary submissions—were true, correct, and complete to the best of the applicant's knowledge.

10. All EIDL applications were submitted online directly to the SBA. Applications submitted after July 10, 2020, were handled by an SBA contractor with servers located in Des Moines, Iowa.

11. Approval of a loan application and the amount of a loan was based, in part, on the information provided on the application by the applicant.

12. Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial

Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS was located in Sterling, VA.

13. EIDL loan proceeds were solely to be used as working capital to alleviate economic injury.

## COUNTS ONE THROUGH TWO
### (Wire Fraud)

14. Paragraphs 1 through 13 are incorporated here.

### The Scheme to Defraud

15. From in or around July 2020 through in or around January 2022, Terrell devised a scheme to defraud the United States government's Small Business Administration and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme

16. The purpose of the scheme to defraud was for Terrell to unlawfully enrich himself and gain access to funds, which he used, in part, to trade stocks and gamble.

### Manner and Means

17. Terrell used the following manner and means, among others, in furtherance of the scheme:

    a. Between July 2020 and January 2022, Terrell applied for an EIDL and two modifications, resulting in District Logistics LLC receiving more than $1.85 million in EIDL proceeds, including approximately $115,800 in July 2020, $384,100 in September 2021, and $1.35 million in January 2022.

    b. Terrell signed a Loan Authorization and Agreement in July 2020, an Amended Loan Authorization and Agreement in September 2021, and another Amended Loan

Authorization and Agreement in January 2022, falsely representing that he would comply with EIDL terms and conditions, including that all loan proceeds would be used solely as working capital to alleviate economy injury, knowing and intending that he would misappropriate some loan proceeds for his personal use, including to trade stocks.

    c.    Terrell submitted fraudulent documents to the SBA in connection with his second loan modification, specifically emailing an updated Schedule of Liabilities falsely showing District Logistics' outstanding debt to Creditor-One being significantly lower than it was and altered PNC wire transfer receipts falsely showing District Logistics as having wired more than $400,000 to Creditor-One when it had wired less than $20,000.

### Execution of the Scheme

18.    On or about the dates set forth below as to each count,

**ROBERT A. TERRELL**

for the purpose of executing the scheme described above, that is to defraud, or obtain money and property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate commerce the following writings and signals for the purpose of executing the scheme to defraud:

| Count | Date | Wire Transmission |
|---|---|---|
| One | January 6, 2022 | Email from mydclogistics@gmail.com to the SBA attaching the fraudulent updated Schedule of Liabilities and four altered PNC wire transfer receipts that falsely showed D.C. Logistics as having paid off more outstanding debt to Creditor-One than it had. |
| Two | January 10, 2022 | Terrell's signing of Amended Loan Authorization and Agreement, which noted that "All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan," which caused the Authorization and Agreement to be uploaded to a server in Iowa. |

**(Wire Fraud, in Violation of Title 18, United States Code, Section 1343)**

## COUNTS THREE THROUGH SIX
### (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

19. Paragraphs 1 through 13 and 15 through 17 are incorporated here.

20. On or about the dates and in the amounts specified below, in the District of Columbia and elsewhere,

**ROBERT A. TERRELL**

did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343.

| Count | Date | Monetary Transaction |
|---|---|---|
| Three | January 18, 2022 | Transfer of $50,000 from District Logistics' PNC Account ending in 0426 to Terrell's Robinhood Account. |
| Four | January 24, 2022 | Transfer of $50,000 from District Logistics' PNC Account ending in 0426 to Terrell's Robinhood Account. |
| Five | February 8, 2022 | Purchase of $50,000 Cashier's Check—payable to a Las Vegas Hotel/Casino—at a PNC Branch in Washington, D.C., using funds from District Logistics' PNC account ending in 3205. |
| Six | February 22, 2022 | Transfer of $47,994.59 from District Logistics' PNC Account ending in 3205 to M&T Bank to pay off mortgage on Rhode Island Ave, NE, property. |

**(Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in Violation of Title 18, United States Code, Section 1957)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One through Two, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States also will seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

2. Upon conviction of the offenses alleged in Counts Three through Six, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). The United States also will seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, involved in these offenses, and any property traceable to such property.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

**A TRUE BILL:**


**FOREPERSON**

JEANINE FERRIS PIRRO
United States Attorney

By: _____
Kevin Rosenberg
Co-Chief
Fraud, Public Corruption, and Civil Rights Section